**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RONALD J. CARINIO, | No. 17-35069 |
| Plaintiff-Appellant, | D.C. No. 3:16-cv-05117-MAT |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Mary Alice Theiler, Magistrate Judge, Presiding

Submitted June 8, 2018[**]
Seattle, Washington

Before: BYBEE and N.R. SMITH, Circuit Judges, and HUCK,[***] District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Paul C. Huck, United States District Judge for the U.S. District Court for Southern Florida, sitting by designation.

Plaintiff Ronald Carinio brought this action in the Western District of Washington under 42 U.S.C. § 405(g), seeking review of an Administrative Law Judge's (ALJ) denial of his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act. The ALJ found Carinio not disabled under the Act, and the district court affirmed. Carinio appeals, and we affirm.

We presume the parties' familiarity with the facts and arguments as presented in the briefs and record, and as described in full in the district court's order. We have jurisdiction under 28 U.S.C. § 1291, and we review *de novo* a district court's judgment affirming an ALJ's denial of Social Security benefits. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).

First, Carinio argues that the ALJ erred by assigning only "some weight" to the findings of Nurse Practitioner Carillo. Carillo had reported in 2013 that Carinio, among other limitations, did not have the functional capacity to sit longer than one hour in a workday, or to stand or walk for even up to an hour. This limitation is not reflected anywhere else in the medical record. N.P. Carillo also reported in 2014 that Carinio, among other limitations, had zero percent capacity to use his hands or fingers for fine manipulation, or to grasp, turn, or twist objects. But Carinio himself said that he vacuums, does laundry, can hold a gallon of milk

at least for more than a couple seconds, and can dress himself, and the record contained no indication that he performs these tasks by any means other than with that amount of hand and finger work typically required to complete the described tasks. An ALJ may give less weight to the opinions of a treating or examining practitioner like N.P. Carillo as compared to those of non-treating or non-examining physicians such as Drs. Nelp, Ramsthel, and Staley, as long as the ALJ includes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record," *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007), and that are "clear and convincing." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the ALJ identified the aforementioned clear and convincing shortcomings in N.P. Carillo's reports, and so we find that the ALJ did not err in giving the reports only "some weight." *See Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may give less weight to a physician's opinion if plainly inconsistent with the record).

Second, Carinio argues that the ALJ impermissibly gave reduced weight to his own testimony, particularly regarding his inability to work and symptom intensity. Where an ALJ gives reduced weight to a claimant's testimony, as the ALJ did here, the ALJ must provide specific, clear, and convincing reasons for doing so by "identify[ing] what testimony is not credible and what evidence

3

undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014). The ALJ did provide such specific, clear, and convincing reasons for finding Carinio's testimony less than credible. The ALJ noted that Carinio's activities "show fewer limitations than alleged," including his dressing, laundry, cleaning, hygiene, cooking, and managing of finances. The ALJ pointed out that Carinio had sought work, such as at a Target store or through the Department of Veterans Affairs' two-week Contemporary Work Training Program. *See Bray v. Comm'r*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (permissible for ALJ to consider evidence of claimant's job search and job training activities in assessing credibility of claimant's professed inability to work). The ALJ also pointed to the periods of Carinio's noncompliance with his medicine as set out in the record. Admittedly, an ALJ

> must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular visit or failure to seek medical treatment.

Social Security Ruling 96-7p. But here, the ALJ did consider other explanations including those implicated by Carinio's period of homelessness, and the fact that the front desk at his previous residence had "controlled" his medicine. Although

"claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), "the ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 6881 (9th Cir. 2005). Carinio's ability to live and, at times, seek work while off his medication is relevant to his credibility regarding the professed symptoms, and the ALJ did not err in giving Carinio's testimony less than full weight.

Third, Carinio argues that the ALJ erred in disregarding lay evidence from his family members and from two Social Security interviewers. An ALJ need only provide germane reasons to discount the testimony of lay witnesses. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). As to evidence provided by Carinio's sister and mother, the ALJ gave their statements "some weight," and adopted most of what they had testified to in Carinio's Residual Functional Capacity (RFC). In the period under review, Carinio's mother and sister had observed him closely, and the ALJ considered their testimony and accepted it where it was consistent with the rest of the medical evidence. The ALJ identified and considered Tomisha Carinio's evidence of her brother's "blurry vision," and ultimately rejected that evidence in light of the absence of any eye-related or

5

vision-related limitations from the medical sources.[1]  As to the Social Security interviewers, Carinio argues that the ALJ erred by not mentioning their reports, which noted *inter alia* that Carinio was "polite," but "dishelved with dirty clothes," and that his clothes were "not clean," from September 2011 and April 2012 respectively.  But an "ALJ is not required to discuss evidence that is neither significant nor probative."  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  Carinio argues that this evidence is significant and probative in connection with the fact that the ALJ had found that Carinio was able to handle his own grooming.  We disagree.  These were casual, nonmedical lay observations of Carinio's appearance at a time he was homeless, and the ALJ did not err in failing to consider them alongside evidence of Carinio's own testimony about his activities of daily living.

Fourth, Carinio argues that the ALJ erred in conducting the RFC determination by giving only "limited weight" to the VA's finding of disability.  In 2013, the VA had granted Carinio a nonservice-connected pension, because his

---

[1] Carinio has been diagnosed with diabetic retinopathy, but does not argue that the ALJ erred at Step Two, and thus does not challenge the ALJ's noninclusion of diabetic retinopathy as a "severe impairment."  The ALJ noted: "The claimant described blurry vision.  He has diabetic retinopathy.  As of February 2014, he reported some leakage of blood vessels behind the eye.  However, no provider gave functional limitations related to that condition."

diagnoses of "diabetes with peripheral neuropathy, skin condition, and retinopathy . . . are considered to be in and of themselves permanently and totally disabling for VA pension purposes." Given the "marked similarity between these two federal disability programs," *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), "[a]n ALJ must consider the VA's finding in reaching his decision and the ALJ must ordinarily give great weight to a VA determination of disability." *Luther v. Berryhill*, 2018 WL 2473490 at *4 (9th Cir. June 4, 2018) (quoting *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011)). But VA ratings are "not conclusive," and do not "necessarily compel the SSA to reach an identical result." *Id*. As such, an ALJ may give less weight to a VA rating "if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009)).

In *Luther*, the claimant had applied for disability benefits on the basis of her service-related PTSD and degenerative disc disease. The VA had found the claimant 100 percent disabled as a result of the PTSD, 10 percent disabled as a result of an infection, and 30 percent disabled as a result of her spine disease, resulting in a total 100 percent disability rating. The ALJ explicitly stated that "[o]ne hundred percent disability VA *has no bearing*." *Id.* at *1 (emphasis added). The ALJ noted that "[i]t's something we consider," but the ALJ failed to address

"how she had considered and weighed the VA's rating," and failed to "articulate any reasons for rejecting it." *Id.* at *4. "Simply mentioning the existence of a VA rating in the ALJ's decision is not enough." *Id*.

Here, the ALJ did review and consider the VA's finding of disability, both at the hearing and in the decision, but noted (1) that the Social Security regulations use different standards and do not provide that the impairments at issue are totally and permanently disabling "in and of themselves," as supported by the testimony of Dr. Nelp, and (2) that the ALJ had reviewed evidence that the VA did not have before it, including Dr. Ramsthel's conclusion that Carinio can perform light work. On the facts of this case we cannot say that the ALJ erred in giving the VA disability rating "limited weight" for the two reasons he articulated. The VA disability rating is a two-page conclusion without analysis: on the basis of the diagnoses alone, Carinio's impairments rendered him eligible for certain VA benefits. The *per se* nature of the VA's determination in Carinio's case renders it mostly useless for the ALJ's very different task of conducting the five-part disability determination process under the applicable SSA regulations. We find that the ALJ did not err in giving the VA disability rating "limited weight," because it referred to and analyzed the VA disability rating, explained why the VA rating cannot as a practical matter be deferred to in this instance, and ultimately

8

gave that rating only "limited weight" with reference to and with the support of Dr. Nelp's testimony.

Fifth, Carinio argues that the ALJ erred at Step Five by improperly relying on vocational expert testimony that was inconsistent with the Dictionary of Occupational Titles (DOT). An ALJ has an affirmative responsibility to inquire and reconcile any conflicts or inconsistencies between a vocational expert's testimony and the DOT. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The reason is to ensure that the claimant can indeed perform an occupation "involving DOT requirements that appear more than the claimant can handle." *Id.* Here, the vocational expert identified three jobs that Carinio could perform from a sedentary position—washroom operator, ink printer, and reel assembler—even with his legs elevated at waist height. The ALJ asked whether his testimony was "consistent with the [DOT]," to which the vocational expert responded that it had been, but "the leg elevation would not be in the DOT, and so that part's based on my experience with those jobs." Carinio does not identify any inconsistency, but argues that it is "evident" that such work cannot be conducted by an employee who "must use a cane while standing and walking, who needs to be able to change his positions at will, and who needs to keep his feet elevated while seated." But "being able to change position at will" is not part of Carinio's RFC, and finds

9

support in the record only in the N.P. Carillo reports, which the ALJ correctly gave only limited weight. And as to his cane, Carinio does not explain how using a cane would be incompatible with the three jobs. As to his feet, Carinio's argument is based on the unsupported argument that one could not perform these sedentary jobs with one's feet elevated. Carinio also argues that on further questioning, the vocational expert testified that if the individual needed additional 20-minute breaks, or if the individual were absent two or three days per month, that any of these limitations would eliminate competitive employment. But none of these limits are part of Carinio's RFC, and the medical record does not support the existence of any such limits. The ALJ did not err in relying on the vocational expert's testimony indicating that there were no inconsistencies between his testimony and the DOT, and in relying on the expert's testimony that based on his experience, the three jobs may be performed with one's feet elevated at waist height.

The district court's judgment affirming the ALJ's denial of benefits is **AFFIRMED**.