**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 24 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RALPH E. BARRETT,

          Plaintiff-Appellant,

  v.

ANDREW M. SAUL, Commissioner of
Social Security,

          Defendant-Appellee.

No.   18-36090

D.C. No. 3:17-cv-06027-MAT

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Mary Alice Theiler, Magistrate Judge, Presiding

Submitted September 3, 2020[**]
Seattle, Washington

Before:  McKEOWN and VANDYKE, Circuit Judges, and CALDWELL,[***]
District Judge.

    Ralph E. Barrett appeals the district court's order affirming the Social Security

Commissioner's denial of disability and supplemental security income benefits.  We

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

have jurisdiction over this appeal under 28 U.S.C. § 1291. Because the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence, we affirm.[1]

We review the district court's order "de novo to ensure that the Commissioner's decision was supported by substantial evidence and a correct application of the law." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (internal alterations and citation omitted). "This is a highly deferential standard of review," *id.*, "and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The consensus among the majority of Barrett's medical examiners was that Barrett can perform tasks commonly associated with light work.[2] The ALJ gave great weight to most of the medical examiners' opinions, discounting only the aspects that were not consistent with the examination findings or the record. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (concluding that "[t]he ALJ need not accept the opinion of any physician ... if that opinion is

---

[1] The ALJ's decision is the final decision of the Commissioner because the Appeals Council denied Barrett's request for review on October 24, 2017.

[2] Only Nurse Garrison found Barrett unable to meet the demands of sedentary work, which seems to suggest that she thought Barrett was disabled.

brief, conclusory, and inadequately supported by clinical findings" (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

**1.** The ALJ afforded appropriate weight to the opinions of Barrett's examining physicians Dr. Jennifer Irwin and Dr. Rebecca Speckman.[3]

**a.** **Dr. Irwin**

The ALJ accorded great weight to almost all of Dr. Irwin's opinion, but she accorded little weight to one aspect of the opinion where Dr. Irwin stated that Barrett "would have difficulty dealing with the usual stress encountered in a workplace at this time." The ALJ explained that this aspect of Dr. Irwin's opinion was not supported by the treatment notes or by Dr. Irwin's own examination findings. *See* 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (determining that an ALJ may reject an opinion upon finding it inconsistent with the medical record). The treatment notes show that Barrett told Dr. Irwin that he can concentrate and finish tasks at an acceptable pace, and Dr. Irwin observed that Barrett demonstrated a cooperative attitude, logical thought processes, normal speech, and could perform three-step tasks. The ALJ also

---

[3] Barrett also argues that the ALJ improperly rejected the opinion of his treating nurse practitioner, Garrison, who opined that Barrett could not even perform full-time sedentary work. The ALJ found this aspect of the opinion lacking in both explanation and support in the medical evidence. Nurse Garrison's opinion contradicted statements by Barrett himself, and Drs. Speckman and Hale and Nurse Garrison failed to explain why Barrett's impairments prevented the performance of the standing and walking requirements for most light jobs. The ALJ did not err in rejecting Nurse Garrison's conclusory, unsupported opinion. *See Bray*, 554 F.3d at 1228.

pointed out that Dr. Irwin said that Barrett could maintain regular attendance and complete a normal work schedule. These reasons for giving less weight to one aspect of Dr. Irwin's opinion are specific and legitimate, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and thus merit our deference. *Batson*, 359 F.3d at 1193.

**b.     Dr. Speckman**

While mistakenly purporting to reject a part of Dr. Speckman's opinion, the ALJ effectively adopted it in full. The ALJ purported to give less weight to the limitations Dr. Speckman described with respect to Barrett's upper *left* extremity, but Dr. Speckman only opined on Barrett's upper *right* extremity limitations. Thus, the ALJ actually gave full weight to the entirety of Dr. Speckman's opinion, and the ALJ's misstatement about Dr. Speckman's opinion constituted harmless error because it did not affect the ALJ's decision. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).[4]

2.     The ALJ reasonably determined that the medical evidence did not support Barrett's testimony about his symptoms and limitations. Barrett testified that "he has difficulty lifting, bending, and reaching, but he noted no significant problems sitting, standing, or walking." Barrett's written statement says that his right shoulder will dislocate if he lifts more than ten pounds, but he testified that he could lift up to

---

[4] Nor did the ALJ err by giving great weight to Dr. Hale's opinion that Barrett can lift or carry 20 pounds occasionally and ten pounds frequently. Dr. Hale's opinion is generally consistent with the medical evidence and physical limitations set forth by Dr. Speckman and the record as a whole.

40 pounds before his right shoulder would begin to dislocate—despite his doctor's instructions to not lift more than 20 pounds. And although the medical evidence shows a back disorder, Barrett reported tingling but no major problems with sitting, standing, or walking. He also "continues to use his right arm for most tasks" despite his doctor telling him not to do so. Additionally, he "did not testify to any significant mental health limitations that would impact his ability to perform full time work," and he failed to state "a reason why he could not perform the gate guard occupation identified by the vocational expert" ("VE") after having an opportunity to reflect upon his impairments and limitations.

The ALJ rationally interpreted the evidence and drew appropriate inferences. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The incongruity between Barrett's testimony and the medical evidence, as well as his sporadic adherence to prescribed treatment, are clear and convincing reasons that support the ALJ's decision to disregard portions of his testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

**3.** Barrett makes several related claims pertaining to the ALJ's residual functional capacity ("RFC") assessment and subsequent findings. First, he contends the ALJ erred in assessing his RFC by not including all of the limitations described by Dr. Irwin, Dr. Speckman, and Nurse Garrison, as well as the limitations Barrett described. Second, Barrett argues that the ALJ erred in her step five finding by

5

relying on the RFC assessment. Finally, Barrett contends that the VE failed to adequately explain how an individual who cannot use his dominant arm for lifting, carrying, pushing, or pulling could perform the jobs of a gate guard and sales attendant.

The ALJ appropriately weighted the medical opinions and provided clear and convincing reasons for disregarding portions of Barrett's testimony. *See Valentine*, 574 F.3d at 693. Thus, the ALJ did not err in assessing Barrett's RFC or relying on the RFC at step five.

At step five, the ALJ's hypothetical "to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217. The ALJ properly relied on the VE's testimony in response to the hypothetical in which the VE identified light work jobs for one-armed people, such as a gate guard or sales attendant, even though the Dictionary of Occupational Titles does not account for the use of only the non-dominant left upper extremity. Because the ALJ's decision is supported by substantial evidence, we conclude that her hypothetical was reasonable and her reliance on the VE's testimony informed by the VE's professional experience was appropriate.[5]

---

[5] Barrett also claims that the ALJ failed to resolve a conflict between the RFC finding and the requirements of "reasoning level three" jobs, such as a gate guard or sales attendant. But there is no clear conflict because Barrett was not limited to jobs involving only simple instructions. *Cf. Zavalin v. Colvin*, 778 F.3d 842, 846–48 (9th Cir. 2015) (recognizing a conflict between reasoning level three work and an RFC restriction to simple, repetitive tasks). After applying the proper analysis and appropriately weighting the evidence, the ALJ deemed Barrett capable of always

6

**AFFIRMED**.

---

remembering and carrying out simple instructions and capable of remembering and carrying out detailed, complex tasks occasionally. This finding is supported by substantial evidence and consistent with the requirements for gate guards and sales attendants.