**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LORAIN ANN STIFFLER,

*Plaintiff-Appellant*,

v.

MARTIN O'MALLEY, Commissioner of Social Security,

*Defendant-Appellee*.

No. 22-55906

D.C. No. 5:21-cv-00436-AFM

OPINION

Appeal from the United States District Court
for the Central District of California
Alexander F. MacKinnon, Magistrate Judge, Presiding

Argued and Submitted August 23, 2023
Pasadena, California

Filed May 28, 2024

Before: Marsha S. Berzon, Johnnie B. Rawlinson, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Rawlinson

# SUMMARY[*]

## Social Security Disability Insurance Benefits

The panel affirmed the district court's judgment affirming the denial of Lorain Ann Stiffler's application for disability insurance benefits under the Social Security Act based on attention deficit hyperactivity disorder, depression, a mood disorder, right knee problems, and a processing disorder.

The panel rejected Stiffler's argument that the Administrative Law Judge erred by rejecting the opinion of Dr. Khosh-Chashm, who concluded that Stiffler had extreme mental functioning limitations and lacked the cognitive and communicative skills required for gainful employment. Substantial evidence supported the ALJ's conclusion that Dr. Khosh-Chashm failed to support his opinion by explaining the relevant objective medical evidence and that the opinion was inconsistent with the other record evidence. Moreover, Stiffler's documented activities suggested a higher range of functioning than assessed by Dr. Khosh-Chashm.

The panel rejected Stiffler's argument that the ALJ failed to resolve a conflict between the testimony of the vocational expert and the Dictionary of Vocational Titles ("DOT"). The ALJ determined that Stiffler was limited to "simple, routine tasks" in an "environment with few workplace changes" and included this limitation in her hypothetical to the vocational expert, who responded that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Stiffler had "the ability to deal with problems involving few concrete variables" as identified in the DOT's General Educational Development Reasoning Level 2. The panel found no conflict because changes to the workplace setting itself—such as requiring workers to work in a different area of the workplace each day or to travel to different locations for each shift—are distinct from "situational variables" in the tasks being performed. Considering the distinction between "an environment with few workplace changes" and "few variables" in the work to be performed, there was no apparent conflict for the ALJ to resolve between the testimony of the vocational expert and the DOT.

## COUNSEL

Lawrence D. Rohlfing (argued), Law Offices of Lawrence D. Rohlfing, Santa Fe Springs, California, for Plaintiff-Appellant.

Caspar Chan (argued), Special Assistant United States Attorney; Mathew W. Pile, Associate General Counsel; E. Martin Estrada, United States Attorney; Office of the General Counsel, Office of Program Litigation, Social Security Administration, Baltimore, Maryland; for Defendant-Appellee.

# OPINION

RAWLINSON, Circuit Judge:

Claimant Lorain Ann Stiffler (Stiffler) appeals the district court's judgment affirming the denial of her application for disability insurance benefits under the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Stiffler was 20 years old when she applied for disability benefits. She based her disability claim on attention deficit hyperactivity disorder (ADHD), depression, a mood disorder, right knee problems, and a processing disorder. Her initial application was denied on March 23, 2018, and denied upon reconsideration the same year. The relevant period for the most recent application began on January 5, 2018.

Dr. Khosh-Chashm saw Stiffler in January 2018 and diagnosed her with major depressive disorder. Dr. Khosh-Chashm observed that Stiffler's depressive moods fluctuated from moderate to severe and had not remitted. Nevertheless, Stiffler was "resilient" and remained "optimistic and future oriented." During this appointment, Dr. Khosh-Chashm completed a "Mental Status Exam" and assessed Stiffler with "[a]verage" intelligence, rating her "[f]air" for concentration, short term memory, and judgment. He rated Stiffler's interactions as "[n]ormal/responsive" and her speech as "[a]ppropriate" with a "[n]ormal" tone. He also recommended a treatment plan for Stiffler's depression.

On March 28, 2018, Dr. Khosh-Chashm completed a "Medical Source Statement Concerning the Nature and

Severity of [Stiffler's] Mental Impairment," and wrote that Stiffler "demonstrate[d] marked differences from peers in social and communication behaviors." He also opined that Stiffler "struggl[ed] to interpret social cues," and had limited decision-making abilities. Dr. Khosh-Chashm expressed the view that Stiffler lacked the skills necessary to maintain gainful employment. He completed a checkbox-style section of the form in which he rated Stiffler's impairment as "[e]xtreme" with respect to her ability to "[u]nderstand, remember, or apply information," "[i]nteract with others," "[c]oncentrate, persist, or maintain pace," and "[a]dapt or manage oneself." Dr. Khosh-Chashm circled "Yes" in response to the question "Does your patient have a low IQ or reduced intellectual functioning[]?" but left blank the space provided for explaining his affirmative response.

A state agency medical consultant, Dr. Goldberg, interviewed Stiffler and reviewed her medical records. Dr. Goldberg concluded that Stiffler was not disabled. He acknowledged that Stiffler had a "well-documented processing disorder, which will impact processing time, and will require simple instructions with some repetition necessary." He also determined that Stiffler had ADHD, for which she was taking medication, and a mood disorder, which was exacerbated after she finished school. Dr. Goldberg ultimately opined that Stiffler's disorders caused limitations on her ability to function, but she was capable of "non-public work."

Dr. Goldberg described Stiffler as "moderately limited" in her ability to 1) carry out detailed instructions, 2) maintain attention and concentration for extended periods, 3) work in coordination with or in proximity to others, 4) make simple work-related decisions, and 5) complete a normal workday and workweek.

Dr. Bilik, another state agency medical consultant, also considered the medical evidence in the record and agreed with Dr. Goldberg that Stiffler was not disabled, but had moderate limitations on her ability to carry out detailed instructions, maintain concentration, work with others, make simple work-related decisions, and complete a normal workday and workweek.

At the hearing, Stiffler testified that because of her depression, she was sometimes unable to get out of bed and unable to "get anything done." She estimated that she was unable to do anything "a few days out of the week." She also testified that she has "a hard time following through" with tasks "because of [her] intellectual disabilities."

During the hearing, the ALJ posed three hypotheticals to the vocational expert. The first hypothetical: "assume[d] an individual the same age and education as [Stiffler] . . .

> [with] no past work. This hypothetical individual is limited to work at all levels of exertion except is limited to simple routine tasks in a routine no stress work environment with few workplace changes, no rapid paced assembly line work, simple work-related decisions, frequent contact with supervisors, occasional contact with co-workers and occasional contact with the general public.

According to the vocational expert, that hypothetical person could work as a laborer, a cleaner, or a dining room attendant.

For the second scenario, the ALJ changed the hypothetical to include a more limited exertion level, light

work.  The vocational expert testified that the hypothetical person with the more limited exertion level could work as a marking clerk (Reasoning Level 2), a mail clerk (Reasoning Level 3), or a laundry worker (Reasoning Level 2).

The ALJ's third hypothetical covered a person who required additional supervision, such as redirection every hour, and who was off-task twenty percent of the day.  The vocational expert responded that this person would need a "job coach situation or a shelter workshop," and would not be able to maintain employment if off-task twenty percent of the workday.  When asked whether her testimony was consistent with the Dictionary of Occupational Titles (DOT), the vocational expert replied that her testimony was consistent, with the exception of the statements "regarding redirection, [and] being off-task," which were based on her experience.

In her decision, the ALJ first concluded that Stiffler had not engaged in substantial gainful activity since her application date.  At step two, the ALJ concluded that Stiffler suffered from the following severe impairments: "ADHD; borderline intellectual functioning; depression; and knee sprain/strain," which significantly limited her ability to engage in basic work activities.  At step three, the ALJ held that Stiffler's impairments did not meet or equal the severity of one of the listed impairments in the governing regulations.

The ALJ determined that Stiffler had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR § 416.967(b) except she is limited to simple, routine tasks in a routine low stress work environment with few workplace changes;

> she cannot perform rapid pace assembly line work; she is limited to simple work-related decisions; she may have frequent contact with supervisors, and occasional contact with coworkers and with the general public.

The ALJ found that Stiffler's conditions could reasonably be expected to cause some of Stiffler's alleged symptoms. But, the ALJ explained that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are inconsistent with the residual functional capacity assessment." The ALJ explained that Stiffler's treatment records undermined her testimony that she had disabling depression precluding her from performing any tasks or activities on a sustained basis. According to her treatment records, Stiffler reported that she engaged in arts and crafts, reading novels, writing poems listening to music, and talking with her best friend. Stiffler also reported, according to her treatment records, that she took walks to the park, participated in a youth group, and stayed busy by cleaning each day. The ALJ further concluded that the conservative treatment history was inconsistent with Stiffler's testimony. The ALJ was also persuaded by the medical opinions of the state agency medical consultants. The ALJ was unpersuaded by Dr. Khosh-Chashm's opinion, describing it as unsupported by and inconsistent with the medical evidence, and inconsistent with Stiffler's "significant activities of daily living."

Based upon the RFC and the testimony from the vocational expert, the ALJ determined that Stiffler could work as a marking clerk, mail clerk, or laundry worker. The district court affirmed the ALJ's decision and Stiffler filed a timely appeal.

## II. STANDARD OF REVIEW

"We review a district court's judgment de novo and set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error. . . ." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (citation omitted). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. . . ." *Id*. (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Dr. Khosh-Chashm's Medical Opinion

Stiffler maintains that the ALJ erred in rejecting Dr. Khosh-Chashm's medical opinion. We disagree. Under governing regulations, the ALJ must assess the persuasiveness of each medical opinion after considering specified factors. *See Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); *see also* 20 CFR §§ 404.1520c(a)-(c), 416.920c(a)-(b). Consistency and supportability are the most important factors. *See Woods*, 32 F.4th at 791; *see also* 20 CFR § 404.1520c(a), (b)(2). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (citation, alteration, and internal quotation marks omitted). Supportability focuses on whether "a medical source supports a medical opinion by explaining the relevant objective medical evidence." *Id*. at 791-92 (citation,

alteration, and internal quotation marks omitted). Ultimately, the ALJ " must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792 (citations, alterations, and internal quotation marks omitted).

Applying these standards, substantial evidence supports the ALJ's weighing of Dr. Khosh-Chashm's medical opinion. The ALJ was unpersuaded by Dr. Khosh-Chashm's medical opinion because it was unsupported by objective findings and was inconsistent with the opinions of Drs. Goldberg and Bilik. Dr. Khosh-Chashm opined that Stiffler "demonstrates marked differences from peers in social and communication behaviors." He also observed that Stiffler "struggles to interpret social cues accurately" and that "her decision-making abilities are limited." He wrote that Stiffler would have difficulty in sustaining employment due to the numerous "extreme" limitations he assessed, including understanding and remembering detailed but uninvolved instructions, carrying out uninvolved detailed instructions, sustaining an ordinary routine without special supervision, working with others, completing a normal workday and workweek, performing at a consistent pace, accepting supervision, and interacting with the general public.

According to the definitions provided on the form, Dr. Khosh-Chashm's rating of "extreme" in each of these areas meant that Stiffler is "*unable* to function in this area independently, appropriately, effectively, and on a sustained basis." (emphasis in the original). However, as the ALJ accurately observed, "Dr. Khosh-Chashm did not reference any specific objective findings to support the extreme mental functioning limitations he assessed." Instead, Dr. Khosh-

Chashm "include[d] only conclusions regarding functional limitations without any rationale for those conclusions."

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford*, 950 F.3d at 1154. Substantial evidence thus supports the ALJ's conclusion that Dr. Khosh-Chashm failed to support his opinion "by explaining the relevant objective medical evidence." *Wood*, 32 F.4th at 791-92 (citation, alteration, and internal quotation marks omitted).

Similarly, substantial evidence supports the ALJ's conclusion that Dr. Khosh-Chashm's opinion was not consistent with the other record evidence. The ALJ reasonably concluded that Stiffler's "significant" daily activities, as described in her treatment records, undermined Dr. Khosh-Chashm's opinion that Stiffler suffers from extreme limitations rendering her unable to function in each of the assessed categories. *See Ford*, 950 F.3d at 1155 (holding that "[a] conflict between a treating physician's opinion and a claimant's activity level" supports rejection of the physician's opinion) (citation omitted).

Notably, Dr. Khosh-Chashm's March 2018 assessment that Stiffler suffered from "extreme" cognitive and social functioning impairments contradicted his own treatment records from January 2018. In the January mental status assessment he conducted, he rated Stiffler as having "[a]verage" intelligence; "fair" concentration, short term memory, and judgment; "[n]ormal" interactions; and "[a]ppropriate" and "[n]ormal" speech.

Dr. Khosh-Chashm's opinion that Stiffler suffered from "extreme" cognitive and social functioning impairments was also inconsistent with the opinions of Dr. Goldberg and Dr.

Bilik. Unlike Dr. Khosh-Chashm, Dr. Goldberg did not determine that Stiffler was extremely limited in any of the abilities required "to perform sustained work activities." Based on his interview and review of her records, Dr. Goldberg found that Stiffler was not significantly limited in the ability to: remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform scheduled activities to sustain an ordinary routine without special supervision; ask simple questions or request assistance; accept instructions and respond appropriately to supervisors; maintain socially appropriate behavior; and respond to changes in the work setting. Dr. Goldberg determined that Stiffler was only moderately limited in the ability to: understand, remember, and carry out detailed instructions; work in coordination with others and get along with them; make simple work-related decisions; complete a normal workday and workweek; maintain attention and concentration for extended periods; and interact with the general public.

Similarly, state agency consultant Dr. Bilik did not determine that Stiffler was "significantly limited" in any of the abilities required "to perform sustained work activities." Instead, based on his review of "all of the evidence in [her] file," Dr. Bilik concluded that Stiffler was only moderately limited in the ability to: understand, remember, and carry out detailed instructions; work in coordination with others and get along with them; make simple work-related decisions; complete a normal workday and workweek; and interact with the general public.

Stiffler argues that the ALJ "rejected Dr. Khosh-Chashm's medical opinion on the basis of" Stiffler's depression. Stiffler maintains that the ALJ disregarded Dr. Khosh-Chashm's assessment regarding her intellectual

development disorder. We disagree. The ALJ acknowledged Dr. Khosh-Chashm's evaluation of Stiffler's intellectual development disorder diagnosis. The ALJ noted that Dr. Khosh-Chashm's opinion indicated that Stiffler "lacked the cognitive and communicative skills required for gainful employment," and that she "would struggle to manage the complexities involved in learning instructions, job complexities, and completing ancillary responsibilities." However, the ALJ determined that Stiffler's "treatment records showed the claimant engaged in a wide range of activities. . . . including participating in arts and crafts, writing poetry, listening to music, spending time with her friends and family, attending youth groups, and going for walks. These documented activities suggest a higher range of functioning than those assessed by" Dr. Khosh-Chashm. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (explaining that "[s]upportability concerns how a medical source supports a medical opinion with relevant evidence") (citation and internal quotation marks omitted). In sum, the ALJ's evaluation of Dr. Khosh-Chashm's medical opinion is supported by substantial evidence.

B.  Vocational Expert Testimony and DOT Conflict

The DOT describes the requirements for listed occupations, including "the reasoning ability required to perform the job." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). Under the DOT, "[t]here are six [General Educational Development] Reasoning Levels that range from Level One (simplest) to Level Six (most complex)." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015), *as amended* (citation omitted). Level 2 requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few

concrete variables in or from standardized situations." *Id*. "When there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the inconsistency. . . ." *Zavalin*, 778 F.3d at 846 (citation omitted).

The ALJ determined that Stiffler was limited to "simple, routine tasks" in an "environment with few workplace changes." She included this limitation in her hypothetical to the vocational expert, who responded with three jobs that Stiffler could perform, two of which required Reasoning Level 2 (marking clerk and laundry worker) and one of which required Reasoning Level 3 (mail clerk).

Stiffler contends that "[t]he ALJ failed to inquire and the vocational witness failed to explain how an individual limited to few changes in the work setting could tolerate occasional variables." Stiffler posits that *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023), supports her position that "few workplace changes presents an apparent conflict with few [concrete] variables."[1]

---

[1] The Commissioner correctly conceded that there was an apparent conflict between the vocational expert's testimony and the DOT description of the mail clerk position. The mail clerk position, according to the DOT, requires Level 3 reasoning, which conflicts with Stiffler's RFC. *See Zavalin*, 778 F.3d at 847 (concluding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"). However, the error in including the mail clerk position was harmless if the other jobs identified survive scrutiny, because the vocational expert identified 200,000 marking clerks, and 185,000 laundry worker positions available in the national economy. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2018), *as amended* (concluding that the ALJ's error was harmless when other identified occupations provided a significant number of available jobs).

We are not persuaded that *Leach* supports reversal of the ALJ's decision. In *Leach*, the claimant challenged the ALJ's mischaracterization of the claimant's RFC. The ALJ had posed a hypothetical question to the vocational expert involving a person who could "work in an environment with occasional changes to the work setting," although the ALJ had determined that the claimant "require[d] a work environment that is predictable *and* with *few* work setting changes." 70 F.4th at 1257 (emphasis in the original). We recognized that the distinction between "occasional changes" and a "few changes" is a "close call;" but we ultimately held that the ALJ erred by reformulating the claimant's limitations, because "[o]ccasional changes may, over time, amount to more than a few changes." *Id.* at 1257-58 (footnote reference and internal quotation marks omitted). We did not address whether a limitation to "few changes" in the workplace was inconsistent with Reasoning Level 2. *See id.* Rather, we reversed because of the effect that mischaracterization may have had upon the relevance of the vocational expert's testimony. *See id.* at 1258. Here, the ALJ did not reformulate the claimant's limitations. Rather, the ALJ in her hypothetical adhered nearly verbatim to the limitations set forth in her RFC determination.

Moreover, unlike in *Leach*, this case turns on the distinction between limitations in the workplace environment, and limitations on the tasks performed. Contrary to Stiffler's proposition, there was no conflict between Stiffler's limitation of "few workplace changes" and inclusion of "the ability to deal with problems involving few concrete variables" in Reasoning Level 2. The capacity to "deal with problems involving a few concrete variables in or from standardized situations," *Rounds*, 807 F.3d at 1103 (citation omitted), identified in Reasoning Level 2, refers to

the "situational variables" that may arise when performing an assigned task. *Zavalin*, 778 F.3d at 848. For example, *Zavalin* explained that a cashier may be confronted with varying situations in the course of "reconciling the cash on hand against the cash register's tape and issuing credit memorandums to customers." *Id*.

On the other hand, the ALJ's reference to an "environment with few workplace changes" concerns broader revisions to the workplace environment. The applicable regulation explains that performance of a job often requires "[d]ealing with changes in a routine work setting," so the inquiry into whether a claimant has an impairment that limits the ability to do basic work activities involves considering to what extent the claimant is able to adapt to changes in the "work setting." 20 C.F.R. § 404.1522(b)(6). As the Supreme Court has explained in another context, "[t]he workplace includes those areas and items that are related to work and are generally within the employer's control." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). The workplace environment or setting would generally include, for example, the location or physical surroundings of the area where the worker's duties are performed. *See, e.g.*, *Popa v. Berryhill*, 872 F.3d 901, 903 (9th Cir. 2017) (discussing record evidence indicating that the claimant was able to "be aware of normal hazards in the work place, and respond appropriately to changes in the work place setting").

By way of example, the Supreme Court in *O'Connor* referenced a hospital and described the "hallways, cafeteria, offices, desks, and file cabinets" as "all part of the workplace." *Id*. at 716. Changes to the workplace setting itself—such as requiring workers to work in a different area of the workplace each day or to travel to different locations

for each shift—are distinct from "*situational* variables" in the tasks being performed. *Zavalin*, 778 F.3d at 848 (emphasis added).

Considering the distinction between "an environment with few workplace changes" and "few variables" in the work to be performed, there was no apparent conflict for the ALJ to resolve between the testimony of the vocational expert and the DOT. *See Zavalin*, 778 F.3d at 846.

IV. <u>CONCLUSION</u>

Substantial evidence supports the ALJ's weighing of Dr. Khosh-Chashm's opinion. Nor was there any conflict between Stiffler's limitation to "an environment with few workplace changes" and Reasoning Level 2.

**AFFIRMED.**