**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MAX ORTIZ,

        *Plaintiff - Appellant*,

  v.

FRANK BISIGNANO,
Commissioner of Social Security,

        *Defendant - Appellee*.

No. 24-5407

D.C. No.
3:23-cv-05757-TLF

OPINION

Appeal from the United States District Court
for the Western District of Washington
Theresa Lauren Fricke, Magistrate Judge, Presiding

Submitted November 21, 2025[*]
Seattle, Washington

Filed June 24, 2026

Before: William A. Fletcher, Richard A. Paez, and Roopali
H. Desai, Circuit Judges.

Opinion by Judge Paez

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY[**]

## Social Security

The panel reversed the district court's judgment affirming a decision of the Commissioner of Social Security denying Max Ortiz's application for Supplemental Security Income benefits, and remanded with instructions to award benefits.

Addressing the conflicting medical opinions in the record, the panel explained that Ortiz filed his SSI application in 2015, and therefore his application was governed by the pre-2017 rules for evaluating medical opinion evidence and the associated caselaw. With respect to the physical evaluations of Ortiz, the panel held that the Administrative Law Judge ("ALJ") did not provide specific and legitimate reasons supported by substantial evidence for discounting treating source Dr. Shute's analysis of Ortiz's pain. With respect to the psychological and psychiatric evaluations of Ortiz, the panel held that the ALJ erred in rejecting all the available opinions relating to Ortiz's mental functioning except for the opinion of one nonexamining source.

Addressing the ALJ's decision to discredit Ortiz's subjective testimony, the panel did not disturb the ALJ's conclusions as to Ortiz's testimony of shakiness in his legs, whole body tremors, shoulder pain, and limitations in standing, memory, and concentration, but held that the ALJ

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

erred in discrediting Ortiz's testimony as to his seizures, depression, low energy, and anxiety.

Because the ALJ erred in rejecting multiple dispositive medical opinions and in rejecting Ortiz's subjective testimony of seizures and mental health symptoms, and the record is fully developed, the panel reversed the district court's judgment with instructions to remand to the ALJ for calculation and award of benefits.

## COUNSEL

Jamie Olivares, Halpern Olivares PLLC, Olympia, Washington; Jeffrey H. Baird, Dellert Baird Law Office, Seattle, Washington; for Plaintiff-Appellant.

Lindsay B. Payne and Rami Vanegas, Special Assistant United States Attorneys; Jeffrey E. Staples and Franco L. Becia, Assistant Regional Counsel, Office of Program Litigation; Mathew W. Pile, Associate General Counsel; Office of the General Counsel, Social Security Administration, Baltimore, Maryland; Rebecca S. Cohen, Assistant United States Attorney; Teal L. Miller, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Seattle, Washington; for Defendant-Appellee.

## OPINION

PAEZ, Circuit Judge:

Max Ortiz ("Ortiz") appeals from the district court's judgment affirming the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income benefits.  We hold that the Administrative Law Judge ("ALJ") erred in rejecting a pain-based limitation on Ortiz's capacity for work by looking to the results of gait, strength, and range of motion tests, where those routine observations said nothing of Ortiz's pain.  The ALJ further erred in rejecting multiple psychological opinions that would have required a finding of disability, as well as Ortiz's subjective testimony of seizures and mental health symptoms.  We therefore reverse and remand with instructions to award benefits.

## I.
## BACKGROUND

### A.  Factual Background

Ortiz was born in 1959.  After amending his application, Ortiz alleges that he has been disabled since September 22, 2016.  He last worked in 2010 as a dining room attendant, busing tables.  Ortiz offers multiple reasons why he is unable to return to work.

Ortiz suffers from chronic lower back and neck pain. Consistent with imaging, Ortiz was diagnosed with multilevel degenerative disc disease in 2018.  Ortiz also suffers from a series of interrelated mental health conditions, including bipolar disorder, anxiety disorder, and personality disorder.  Ortiz's diagnoses are grounded in a history of

trauma, suicidal ideations, at least one attempted suicide, and methamphetamine and alcohol abuse.

Ortiz also struggles with a seizure disorder, reporting seizure incidents dating back to 1991, although they appear to have become more frequent over time. At a 2023 hearing, Ortiz testified that he experiences seizures twice daily. In 2019, a neurologist diagnosed Ortiz with non-epileptic, psychogenic seizures, likely manifestations of his trauma. He has sought emergency medical care for seizures multiple times, including in February 2017 and March 2022. Ortiz kept a seizure journal for at least two years in which he documented seizures as often as every couple of days. As of 2023, Ortiz's seizures had prevented him from driving for seven years.

## B. Physical Evaluations

Between 2017 and 2019, Ortiz sought treatment for multiple physical and mental health ailments from Dr. Keiran Shute. Dr. Shute treated Ortiz on at least seven occasions. After two encounters in 2017, Dr. Shute completed a physical evaluation for the Washington State Department of Social and Health Services ("DSHS") on July 6, 2017. In that evaluation, Dr. Shute limited Ortiz to light work for ninety-nine months.

On November 11, 2017, Dr. Derek Leinenbach performed a physical examination of Ortiz for the Social Security Administration. Dr. Leinenbach determined that Ortiz was capable of engaging in all work-related functions continuously, except that he determined that Ortiz could frequently lift up to only twenty pounds.

### C.  Psychological and Psychiatric Evaluations

On March 2, 2016, Dr. Thomas Clifford completed an assessment of Ortiz's residual functional capacity.  Dr. Clifford did not treat or examine Ortiz.  Rather, he reviewed three prior mental health evaluations from Dr. Patricia Sylwester (November 2015), Dr. Peter Weiss (July 2015), and Dr. Keith Krueger (October 2013).  Based on this review, Dr. Clifford determined that, among other matters, Ortiz was not limited in his ability to maintain a schedule and attendance or in his ability to complete a normal workday and workweek without interruptions from psychological symptoms.

Dr. Terilee Wingate performed a psychological and psychiatric evaluation for DSHS on July 17, 2017.  Based on an examination and a review of two other evaluations from 2015 and 2013, Dr. Wingate diagnosed Ortiz with bipolar disorder, anxiety disorder, and personality disorder, noting his severe mood swings, history of suicidal ideation, emotional instability, social avoidance, and sensitivity to criticism.  Contrary to Dr. Clifford, Dr. Wingate determined that Ortiz had "marked" limitations in his ability to keep a schedule, maintain regular attendance, and be punctual; to maintain appropriate behavior in a work setting; and to complete a normal workday and workweek without interruptions from psychological symptoms.

Dr. Weiss reexamined Ortiz on June 5, 2019, and reviewed three prior evaluations, including Dr. Wingate's evaluation and one of his own prior evaluations.  Like Dr. Wingate, Dr. Weiss diagnosed Ortiz with bipolar disorder.  Dr. Weiss also made similar determinations about Ortiz's capacity for work, finding "severe" restrictions in Ortiz's ability to "[p]erform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances without special supervision," as well as Ortiz's ability to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms," along with other "marked" restrictions.

## D. 2018 and 2020 ALJ Decisions

Ortiz applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits in 2015. His Disability Insurance claim was later dismissed after he amended his alleged onset date. After a 2017 hearing, an ALJ denied Ortiz's application for benefits in 2018. The Appeals Council of the Social Security Administration vacated the 2018 decision because it was inconsistent; the decision gave significant weight to the opinion of Dr. Shute, who limited Ortiz to light work, but simultaneously found Ortiz capable of medium work. After a further hearing in 2020, the same ALJ determined that Dr. Shute's opinion warranted little weight and again denied Ortiz's application. The Appeals Council denied review.

Ortiz sought judicial review of the adverse decision, and in 2021, the district court reversed and remanded for further proceedings. The court determined that substantial evidence did not support the ALJ's decision to give little weight to Dr. Shute's opinion. In particular, it held that it was error to look to Dr. Shute's shoulder pain observations where Dr. Shute's opinion was based on Ortiz's neck and lumbar pain, and that there was no inconsistency between the light work limitation and the recommendation that Ortiz engage in exercise, as the exercise was intended to relieve Ortiz's pain and promote

recovery.[1]  The court, however, affirmed the ALJ's decision to discount the opinion of Dr. Weiss, rejecting the argument that the ALJ cherry-picked normal mental health findings. The district court remanded for further proceedings.

### E.  2023 ALJ Decision

On remand, the case was assigned to a new ALJ to conduct a new hearing and issue a new decision.  On May 1, 2023, the ALJ denied Ortiz's application.   His decision followed the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  At step one, the ALJ confirmed that Ortiz had not engaged in substantial gainful activity since the amended alleged onset date.  At step two, the ALJ found that Ortiz suffered from multiple impairments that, although not severe individually, were cumulatively severe.  At step three, the ALJ found that these impairments did not satisfy any of the per se disabling impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four, the ALJ found that Ortiz had a residual functional capacity to perform medium work, as defined in 20 C.F.R. § 416.927(c), except that

> he is able occasionally to climb ladders,
> ropes, or scaffolds, with occasional exposure
> to hazards, including occasional commercial
> driving. He is able to understand, remember,
> and   apply   short,   simple   instructions;
> performing routine, predictable tasks; not in
> fast-paced, production-type environment; to
> make simple decisions; to tolerate exposure

---

[1] The district court also faulted the ALJ for disregarding Dr. Shute's opinion based on an ambiguous record notation rather than seeking clarification from the physician.

> to occasional, routine workplace changes; with occasional interaction with the general public.

In reaching this determination, the ALJ rejected Ortiz's subjective testimony of tremors, shoulder pain, limitations in standing, psychogenic seizures, poor memory, and "mood challenges"—apparently referring to Ortiz's testimony of depression, low energy, and anxiety. At the hearing, the ALJ considered a light work limitation before realizing and noting on the record that it would result in an automatic disability based on Ortiz's age and education.

In determining Ortiz's residual functional capacity, the ALJ assigned weights to the medical opinions he considered, although he did not accept any opinion in full. The ALJ afforded Dr. Leinenbach's opinion significant weight but deviated—by five pounds—from Dr. Leinenbach's determination that Ortiz should not frequently lift more than twenty pounds. In so doing, the ALJ inched Ortiz into the medium work category, which requires the ability to frequently lift up to twenty-five pounds. *See* 20 C.F.R. § 416.967(c). The ALJ gave Dr. Shute's opinion little weight, finding the limitation to light work inconsistent with Dr. Shute's own notes and other record evidence.

The ALJ gave Dr. Clifford's opinion substantial weight. But the ALJ gave very little weight to the opinions of Drs. Wingate and Weiss. As to their determinations that Ortiz could not maintain a schedule or make it through a workday without interruptions from psychological symptoms, the ALJ found that such assessments could only be made with the benefit of longitudinal observation. The ALJ did not note that Drs. Wingate and Weiss had each reviewed prior evaluations spanning back multiple years. The ALJ also

found multiple inconsistencies between the limitations proposed by Drs. Wingate and Weiss and the record evidence.

At step four, the ALJ found that Ortiz's residual functional capacity prevented him from performing any past relevant work.  But at step five, the ALJ found Ortiz not disabled based on his age, education, work experience, and, crucially, his capacity to perform medium work with the ALJ's additional imposed limitations.  The ALJ noted the Vocational Expert's opinion that significant jobs existed in the national economy for someone with such a profile.  The Vocational Expert also testified that additional limitations for missing work, extra breaks, or getting off task would be "preclusive" of gainful employment.  The ALJ did not note this testimony.

Ortiz again sought judicial review, but this time, a Magistrate Judge affirmed the ALJ's decision and entered judgment in favor of the Commissioner.  The court affirmed the ALJ's decision to give little weight to Dr. Shute's opinion because, unlike the prior ALJ's 2020 decision, the new ALJ found inconsistencies between Dr. Shute's opinion and other record evidence.  The court also rejected a cherry-picking challenge to the ALJ's analysis of Dr. Weiss's opinion under the law of the case rule, as the district court's prior remand order had rejected an identical challenge.  And the court rejected an identical challenge to the analysis of Dr. Wingate's opinion on the same grounds.  The court also affirmed the ALJ's rejection of multiple aspects of Ortiz's subjective testimony based on inconsistencies with record evidence.  Ortiz timely appealed.

## II.
## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We review de novo the district court's order affirming the Commissioner's denial of benefits. *Revels v. Berryhill*, 874 F.3d 648, 653–54 (9th Cir. 2017). We may "set aside a denial of Social Security benefits only when the ALJ decision is 'based on legal error or not supported by substantial evidence in the record.'" *Id.* at 654 (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).

## III.
## DISCUSSION

### A. Medical Opinions

As to both Ortiz's physical and psychological limitations, there are conflicting medical opinions in the record. Had the ALJ credited any of the opinions of Drs. Shute, Wingate, or Weiss, he would have been required to award Ortiz benefits. In rejecting those opinions, and crediting the contradictory opinions of Drs. Leinenbach and Clifford, the ALJ erred.

Because Ortiz first filed his SSI application in 2015, his application is governed by the pre-2017 rules for evaluating medical opinion evidence and our associated caselaw. 20 C.F.R. § 416.927; *see also Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Accordingly, the ALJ was required to distinguish among three tiers of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the opinions of

treating and examining physicians contradicted by other evidence, including the opinions of Drs. Shute, Wingate, and Weiss, the ALJ was required to identify "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31. He did not.

### 1. Physical Evaluations

The ALJ rejected the opinion of Dr. Shute—a treating source—that Ortiz be limited to light work. In so doing, the ALJ found that Dr. Shute's limitation based on neck and back pain was inconsistent with other record evidence showing that, in routine observations, Ortiz exhibited normal gait, strength, and range of motion. Similarly, the ALJ found Dr. Shute's assessment of neck and back pain to be inconsistent with Dr. Shute's own observations that Ortiz exhibited a normal range of motion, albeit with pain. Finally, the ALJ found that Dr. Shute's pain assessment was inconsistent with his own recommendation that Ortiz engage in light exercise. None of these reasons is supported by substantial evidence.

Dr. Shute based his light work limitation on Ortiz's neck and back pain, which he determined had moderate interference with Ortiz's ability to stand, lift, carry, handle, push, pull, reach, stoop, and crouch. The ALJ rejected this limitation because other clinicians repeatedly found Ortiz to have "normal gait, normal strength, and normal range of motion." But findings of normal gait, strength, and range of motion are not necessarily inconsistent with Dr. Shute's light work limitation based on chronic neck and low back pain. In fact, although the ALJ cited forty-one pages of record evidence to this effect, not one of those citations states that Ortiz exhibited normal gait, strength, or range of motion

*without neck or back pain.* [2]    The ALJ thus erred in identifying a purported inconsistency that is not reflected in the record.

Normal results of strength, gait, and range of motion tests, without more, do not contradict diagnoses based on pain where the results do not indicate whether the test accounted for the relevant pain.  That is, a patient might be able to push herself to exhibit full strength or range of motion, or a normal gait, while also experiencing pain.

Our precedents support the conclusion that a claimant may be disabled on account of pain although she is still capable of significant physical exertion.  We have long held, albeit in a different context, that pain may be a "non-exertional limitation" on one's capacity for work distinct from exertional limitations on weightlifting, standing, walking, etc.  *See, e.g.*, *Penny v. Sullivan*, 2 F.3d 953, 959 (9th Cir. 1993); *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 577 (9th Cir. 1988); *Tackett v. Apfel*, 180 F.3d 1094, 1101–02 (9th Cir. 1999).  In this line of cases, we examined the relationship between the Medical Vocational Guidelines, also known as "the grids," and non-exertional

---

[2] Most of the citations record routine observations of Ortiz's gait and the results of routine strength and range of motion tests—without indicating whether the test accounted for pain—noting only that Ortiz's gait, strength, or range of motion was "normal," "intact," "stable," or "steady."  Many of these citations are to records of health exams unconcerned with the relevant symptoms, such as a sleep study and neurological consultations.  Other record citations directly contradict the ALJ's intended proposition, confirming Ortiz's neck and back pain alongside normal results of tests unrelated to pain, or noting that Ortiz experienced pain on motion.  Yet other citations have nothing to do with the relevant pain, noting, for instance, that Ortiz was negative for "joint pain."

limitations such as pain. *Tackett*, 180 F.3d at 1101–02. The grids provide a streamlined method for the ALJ to determine whether a claimant's residual functional capacity allows the claimant to perform work that exists in significant numbers in the national economy. *Id.* at 1101. The grids enable this streamlined analysis by considering only four variables: the claimant's capacity for work (sedentary, light, medium), age, education, and work experience. *Id.* But we have explained that "[i]f a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." *Penny*, 2 F.3d at 958. Pain is one such non-exertional limitation because it may not "affect a claimant's strength, but nonetheless affect[] a claimant's ability to work (for example, when a claimant's muscles enable him or her to lift an object, but the claimant is so distracted by the pain that he or she realistically cannot perform the work)." *Desrosiers*, 846 F.2d at 579 (Pregerson, J., concurring). If such a non-exertional limitation is sufficiently severe, the ALJ errs by relying on the grids, because the claimant may have the strength for work that she nonetheless cannot be expected to perform. *Penny*, 2 F.3d at 958. The implication of this reasoning is that strength and the physical ability to perform work are not necessarily inconsistent with debilitating pain, and that we do not expect a claimant to push through severe pain to perform work.

So too here. Because the results of the gait, strength, and range of motion tests relied upon by the ALJ to find an inconsistency did not account for Ortiz's relevant pain, the ALJ erred by relying on that evidence to reject Dr. Shute's opinion.

Further, conflating pain with gait, strength, and range of motion reflects a "misunderstanding" of Ortiz's underlying medical condition. *See Revels*, 874 F.3d at 662 (concluding that the ALJ erred by misunderstanding a fibromyalgia diagnosis). "In evaluating whether a claimant's residual functional capacity renders them disabled because of" a particular condition, "the medical evidence must be construed in light of [that condition's] unique symptoms and diagnostic methods." *Id.* Here, the primary symptom of degenerative disc disease—a diagnosis that the ALJ recognized—is back pain, not abnormal gait, reduced strength, or limited range of motion.[3] We have recognized that certain impairments, such as fibromyalgia, can result in "chronic pain" alongside "muscle strength, sensory functions, and reflexes that are normal." *See Revels*, 874 F.3d at 656, 663 (citation modified). The same logic applies here. Like other conditions that result in pain without limitations on strength or mobility, Ortiz's condition causes him pain, and that pain independently supports his diagnosed exertional limitation.

This understanding of the relationship between pain, mobility, and strength indicates that the purported inconsistencies with Dr. Shute's own notes are fleeting at best. If Dr. Shute found that Ortiz's "back showed full range of movement but with complaints of discomfort," that can only bolster Dr. Shute's conclusion, as discomfort was the basis of his opinion. And, as the district court noted five years ago, it is irrelevant that Ortiz's "left shoulder had a full

---

[3] *See, e.g.*, Yong-Soo Choi, *Pathophysiology of Degenerative Disc Disease*, 3 Asian Spine J. 39–44 (2009), https://pmc.ncbi.nlm.nih.gov/articles/PMC2852042/ [https://perma.cc/9BX8-CN8R].

range of motion, was not tender, and had normal motor strength." The same observation also applies to Dr. Shute's findings of "intact musculoskeletal strength and normal gait"—neither finding is inconsistent with pain.

The ALJ also took issue with Dr. Shute's recommendation that Ortiz engage in exercise. But that exercise was prescribed with the knowledge that it would cause Ortiz pain, and he was instructed to use "pain medications and interventional pain medicine strategies to lower [his] pain so that [he] participate[s] in the physical activity that will produce long-lasting pain reductions." Prescribing exercise that may cause pain on the path to recovery is not inconsistent with a diagnosed limitation based on pain. In 2021, the district court rejected this same error.

Finally, Dr. Shute's recommendation of "conservative care" is not a valid basis to discount his opinion. "[T]he failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability." *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017).

The above errors are compounded by the ALJ's failure to defer to the opinion of a treating source. Because Ortiz filed his application before 2017, the ALJ was required to give greater weight to the opinion of a treating physician, such as Dr. Shute, relative to the opinion of an examining physician, like Dr. Leinenbach. *Lester*, 81 F.3d at 830–31; *Woods*, 32 F.4th at 789. But instead, the ALJ discounted Dr. Shute's opinion, which was informed by multiple treatments performed over two years, in favor of Dr. Leinenbach's evaluation based on a single examination. And in discarding

Dr. Shute's opinion, "the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, [or] the nature and extent of the treatment relationship . . . . This failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676 (citation omitted). The ALJ thus did not provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Shute's analysis of Ortiz's pain.

### 2. Psychological and Psychiatric Evaluations

### a. Dr. Clifford

The ALJ rejected all the available opinions relating to Ortiz's mental functioning except for the opinion of one nonexamining source—Dr. Clifford's—to which he gave "substantial weight." This was error. Dr. Clifford's nonexamining opinion relied exclusively on the opinions of three examining sources: Drs. Sylwester, Weiss, and Krueger. But the ALJ rejected the validity of each of those three opinions, individually, as outdated. This is not "legitimate" reasoning. *See Lester*, 81 F.3d at 830–31. If the bases of Dr. Clifford's opinion are not entitled to any weight, Dr. Clifford's opinion cannot be entitled to substantial weight. Zero plus zero plus zero does not equal one.

Adding to the error, not only was Dr. Clifford's opinion unsupported, but it was also a nonexamining opinion. 20 C.F.R. § 416.927(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."). Because the ALJ invalidated the "support[]" underlying Dr. Clifford's opinion, he could not

validly give Dr. Clifford's opinion substantial weight in the
same breath.  *See id.*

### b.  Dr. Wingate

Dr. Wingate examined Ortiz and evaluated records of
prior examinations.    The ALJ gave Dr. Wingate's
evaluations "very little weight" based on three concerns.
None of the concerns is supported by substantial evidence.

First, the ALJ determined that "the functional areas that
Dr. Wingate opined to be markedly limited are areas that
could only be assessed over time, such as tendency to be on
time, sustain a workday, and maintain behavior."  But the
ALJ apparently "misunderstood" the evidence, because
Dr. Wingate's evaluation was based on a review of
multiple psychological evaluations dating back to 2013.[4]
*See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)
(faulting the ALJ for "failing to recognize" supporting
documentation).

Second, the ALJ rejected Dr. Wingate's evaluation as
inconsistent with Ortiz's attendance in "group sessions,
where he participated in the activities and demonstrated a
[sic] good behavior," as well as his attendance in
"counseling sessions 5 times a month and . . . [Alcoholics
Anonymous ("AA")] meetings twice a week."   Neither
purported conflict is availing.

As to the "group sessions," "[t]hese limited activities are
entirely consistent with the medical opinion."  *Trevizo*, 871
F.3d at 676.  Ortiz's "Music and Mindfulness" group therapy
session    involved    "various    guided    group    drumming

---

[4] Nor is it clear that such limitations can only be assessed with the benefit
of longitudinal observation.  The Commissioner cites no authority to this
effect.

exercises, free improvised playing, and discussion with the group about his experience." Ortiz's limited participation in such therapeutic exercises does not rebut Dr. Wingate's opinion about an inability to regularly function in the workplace. Similarly, Ortiz's weekly counseling and twice-weekly AA sessions, with their "limited" required attendance and duration, are "consistent" with an inability to maintain a regular, forty-hour work week. *Id.*

Third, the ALJ found that Dr. Wingate's evaluation was inconsistent with the fact that Ortiz "has been noted to [sic] numerous occasions during the relevant period to have generally intact mentally [sic] orientation, memory, judgment, insight, affect, behavior, and/or thought content, despite his impairments." The ALJ's findings, however, do not contradict the relevant diagnoses underlying Dr. Wingate's opinion, as the ALJ's conclusion is again premised on a "fundamental misunderstanding" of the nature of Ortiz's symptoms. *Revels*, 874 F.3d at 662; *see also Garrison*, 759 F.3d at 1017–18. Take, for instance, Ortiz's diagnosis of bipolar disorder, one of three bases of Dr. Wingate's opinion. The hallmark of bipolar disorder is that it is episodic—individuals suffering from the condition experience "recurring mood episodes," and "many individuals return to a fully functional level between episodes." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 143, 148 (5th ed. 2022). Properly understood, this condition is not inconsistent with Ortiz occasionally presenting with normal behavior and affect. The record citations are only snapshots of Ortiz, generally in the context of routine observations and outside of mental health treatment. *See Garrison*, 759 F.3d at 1017 ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of

the patient's overall well-being *and the nature of her symptoms*." (emphasis added)).

Finally, the above errors are compounded by the fact that the ALJ rejected Dr. Wingate's testimony in favor of a nonexamining source, Dr. Clifford. *See Trevizo*, 871 F.3d at 675–66.

### c.  Dr. Weiss

Like Dr. Wingate, Dr. Weiss both examined Ortiz and considered records of prior examinations. The ALJ gave Dr. Weiss's determinations "very little weight" based on four perceived issues. None are "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31.

First, as with Dr. Wingate, the ALJ held that Dr. Weiss's determinations could only be assessed over time. And, as with Dr. Wingate, the ALJ wrongly ignored the longitudinal basis of Dr. Weiss's opinion, which was based on a review of multiple psychological evaluations dating back to 2013. *See Garrison*, 759 F.3d at 1014.

Second, the ALJ found Dr. Weiss's determinations inconsistent with Dr. Weiss's own findings, such as his findings that Ortiz had "normal thought process, normal thought content, normal mental orientation, normal memory, normal fund of knowledge, normal abstract thought, normal insight, normal judgement, and the ability to count backwards from 20 to one without error." But it is not inconsistent that one might think clearly, remember well, and be able to count—during isolated examinations—but still be incapable of functioning in a workplace five days a week, eight hours a day, particularly if one is susceptible to volatile swings in behavior and mood on account of

diagnosed bipolar disorder.  *Cf. Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

So too for the apparent inconsistency with Dr. Weiss's observations of normal speech, cooperation, and Ortiz's "ability to sustain concentration and persistence throughout the mental evaluation" (presumably remarking at Ortiz's ability to answer questions).   These abilities are not inconsistent with bipolar disorder or the inability to maintain gainful employment.  *See Trevizo*, 871 F.3d at 676.

Third, the ALJ repeated another error from the analysis of Dr. Wingate's opinion, relying on isolated recordings of normal behavior to contradict mental health diagnoses, like bipolar disorder, that are inherently episodic.

Fourth, the ALJ found Dr. Weiss's observations inconsistent with Ortiz's "ability to drum, use public transportation, perform household chores, tend to his own self–care, count change, handle a savings account, care for family pets, draw, read, mix CDs, [and] cook."  This was error.  The ALJ did not make any "specific findings" about what these activities require of Ortiz on a daily and weekly basis and how his performance of them demonstrates his fitness to work full days and weeks, on time, with appropriate workplace behavior.  *See Trevizo*, 871 F.3d at 676.  And the ALJ further erred because "[t]hese limited activities are entirely consistent with the medical opinion," *id.*, given the episodic nature of bipolar disorder.

The Commissioner urges us to consider *Stiffler v. O'Malley*, 102 F.4th 1102 (9th Cir. 2024), but that case only

further highlights the ALJ's error. *Stiffler* confirms that the ALJ must identify a real "conflict" between the relevant functional area, the level of assessed limitation (e.g., total or partial), and the claimant's daily activities. 102 F.4th at 1107 (quoting *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)). There, the relevant medical source determined that the claimant had "extreme" impairments in, among other domains, her ability to "[a]dapt or manage oneself," making her "*unable* to function in [that] area." *Id.* at 1104, 1106. But the claimant elsewhere reported "stay[ing] busy by cleaning each day." *Id.* at 1105. Cleaning one's home every day at least reasonably conflicts with a purported total inability to manage oneself.

Here, by contrast, there is no real conflict between Ortiz's assessed limitations and daily activities. Making music and art, riding the bus, cooking, reading, and counting have no bearing on the two functional areas that Dr. Weiss marked as severely impaired: maintaining a schedule and attendance, and working a full day without interference from psychological symptoms.[5] And there is yet less conflict between Ortiz's daily activities and the functional areas that Dr. Weiss found to be only markedly impaired—that is, not totally impaired. Definitionally, one might occasionally work past a partial limitation.

## B. Subjective Testimony

We turn to the ALJ's decision to discredit Ortiz's subjective testimony. At step one, the ALJ determines whether medically determinable impairments could

---

[5] In Dr. Weiss's evaluation, a "severe" limitation indicates "the inability to perform the activity in regular competitive employment or outside of a sheltered workshop." A "marked" limitation indicates "a very significant limitation on the ability to perform the activity."

reasonably be expected to produce the alleged symptoms. *Garrison*, 759 F.3d at 1014. At step two, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ used this two-step analysis to weigh Ortiz's subjective assessment of his symptoms. Although Ortiz cleared step one, at step two the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully consistent with the medical evidence and other evidence in the record[.]" After reviewing Ortiz's treatment history at length, the ALJ discounted Ortiz's subjective testimony as to multiple physical and mental impairments.

We do not disturb the ALJ's conclusions as to Ortiz's testimony of shakiness in his legs, whole body tremors, shoulder pain, and limitations in standing, memory, and concentration.[6] But the ALJ erred in discrediting Ortiz's

---

[6] We note, however, that in rejecting Ortiz's testimony regarding his inability to stand for more than ten to fifteen minutes at a time, the ALJ relied, in part, on the same flawed reasoning we identified with regard to the rejection of Dr. Shute's opinion. Normal gait, strength, and mobility are not inconsistent with subjective testimony of pain. *See supra* Section III.A.1. The ALJ properly relied on other evidence, however, to reject Ortiz's professed limitation in standing, such as longitudinal physical therapy results.

testimony as to his seizures, depression, low energy, and anxiety.

### 1.  Psychogenic Seizures

The ALJ erred in rejecting Ortiz's psychogenic seizure symptom testimony.  At the 2017 and 2023 hearings, Ortiz testified that he regularly experienced seizures, or "seizure-type episodes."  He described having them every night and sometimes in the morning as well, or every day and every night.  He described his seizure episodes as a period of blank staring where he is unaware of what is happening for a period of two to three minutes.  After the episodes, Ortiz testified that he needs about an hour to gather himself.  He testified that he does not drive because of these seizures, on his doctor's orders.

The ALJ apparently found Ortiz's testimony contradicted by other testimony revealing that Ortiz's seizure medication, Depakote, "worked well when the claimant was compliant with the prescribed medication." Ortiz testified that the medication limited his seizure symptoms, but not completely.

> [ALJ:] Yeah. I mean was it controlling the episodes then when you were on the meds, did they control the episodes?
> [Ortiz:] I went through with several medication trials and a few of them did not help at all and just made things worse, but the – this one I am on now. It helps but I am still shaking and twitching at night and it would last about three to four minutes and then it stops. Sometimes in the morning when I get

> up, it will happen again and I just get up and
> you know, walk around.

The ALJ also cited a smattering of medical notes purportedly showing improvements with the medication. And the ALJ concluded that Ortiz "has not sufficiently established the confusion or fatigue that he asserts after seizures, and the undersigned finds insufficient evidence of the need for further limitations."

The ALJ did not give "clear and convincing reasons" to discredit Ortiz's seizure symptoms. *Garrison*, 759 F.3d at 1014–15 (quoting *Smolen*, 80 F.3d at 1281). The above testimony shows that Ortiz was still experiencing seizure symptoms on his medication, both at night and in the morning. The ALJ did not specifically mention or discredit later testimony that Ortiz was still experiencing twice-daily seizures even on medication. The ALJ thus improperly "mischaracterized" Ortiz's testimony. *See id.* at 1016.

And there is not substantial evidence in the record for the proposition that medication resolved Ortiz's seizure disorder. Most of the proffered record citations do not support that conclusion at all, either not mentioning seizures, noting only that Ortiz ran out of his medication, or noting that he wanted to get back on his medication. Ortiz did, at one point, note that he was feeling "much better" on Depakote, but that lone citation does not make for a trend, nor does it clarify whether his seizures had stopped, or how frequent they had become.

The ALJ thus erred in disregarding Ortiz's subjective seizure testimony. And the consequence of this error is evident in the ALJ's residual functional capacity determination, which provides that Ortiz has the capacity to

"climb ladders, ropes, or scaffolds, with occasional exposure to hazards, including occasional commercial driving." The record evidence, however, does not show that Ortiz can engage in such hazardous work. To the extent that the ALJ purported to partially account for Ortiz's seizures in setting these limitations, this was not reasoned decision-making.

### 2.  Mental Health

The ALJ did not give sufficient reasons for discarding Ortiz's other mental health testimony. In 2017 and 2023, Ortiz testified that he suffers from depression, persistently low energy, and anxiety (related to post-traumatic stress disorder) that makes it hard for him to work and to be around others. But while the ALJ recited at length Ortiz's treatment history, with all of its ups and downs, the ALJ did not cite any record evidence to support the conclusion that "when he took his prescribed medications, [Ortiz's] mental health symptoms were consistently stable." Nor did the ALJ cite evidence that despite Ortiz's "mood challenges, these episodes were not long lasting, and . . . they would not result in greater limitations on his longitudinal functioning than is set forth in the residual functional capacity." This was error. The absence of a reason cannot be a "clear and convincing" reason; rather, the ALJ "obviously must rely on examples to show why they do not believe that a claimant is credible." *Garrison*, 759 F.3d at 1018; *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1201 (9th Cir. 2024) (holding that the ALJ erred by failing to provide any evidence to support the finding that the claimant's testimony was inconsistent with the record).

The ALJ did proceed, in the same paragraph, to provide record citations to evidence of normal memory and concentration, but that record evidence does not support the

decision to discredit testimony regarding depression, chronically low energy, and anxiety. To discredit subjective symptom testimony, the ALJ must rely on record citations that discredit the symptom at issue, not other symptoms. *Ferguson*, 95 F.4th at 1200 (holding that evidence of a normal mood is not inconsistent with testimony about headaches).

## C. Credit-As-True

Finally, we must decide whether to remand for further proceedings or an award of benefits. We remand for calculation and award of benefits. Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," we remand to an ALJ for calculation and award of benefits instead of further proceedings. *Trevizo*, 871 F.3d at 682–83 (quoting *Garrison*, 759 F.3d at 1020). The one "rare" possible exception is where "the record as a whole leaves serious doubt as to whether the claimant is actually disabled, in which case we remand for further development of the record." *Id.* at 683 n.11 (citation omitted).

Each of the factors to remand for an award of benefits is met here. The over 2500-page record is complete, including three hearing transcripts with two different ALJs probing into the details of Ortiz's application. As discussed above, the ALJ failed to give legally sufficient reasons for rejecting the opinions of Drs. Shute, Wingate, and Weiss, as well as some of Ortiz's subjective testimony. And crediting the

opinions of any of those medical sources would require the ALJ to find Ortiz disabled. At Ortiz's advanced age and education, with the ALJ's undisputed finding that he is unskilled, Dr. Shute's recommended limitation to light work would result in an automatic finding of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2.

So too with the limitations assessed by Drs. Wingate and Weiss regarding Ortiz's ability to regularly attend work and to get through a full workday without interruptions from psychological symptoms. The Vocational Expert found that if the hypothetical individual matching Ortiz's residual functional capacity consistently missed work or required one additional break per day of fifteen to twenty minutes, there would be no available work at step five.

Nor is there any serious doubt as to whether Ortiz is disabled within the meaning of the Social Security Act. To argue otherwise, the Commissioner mistakenly relies on *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090 (9th Cir. 2014). But *Treichler* is inapposite, as we clarified in that case that we were "not deciding Treichler's disability claim de novo; rather, we [] consider[ed] whether the district court abused its discretion in determining that there are outstanding issues in the record that should be decided by the agency under the ordinary remand rule." *Id.* at 1104–05.

Finally, Ortiz's age and long delay in awaiting benefits also counsel against further proceedings. *See Trevizo*, 871 F.3d at 683. Ortiz first applied for benefits in 2015. Two reviewing courts have already found errors in the handling of his application for benefits, and some of those errors have recurred in this latest denial of benefits. We decline to invite

further repetition of this already unfortunate administrative history.

## IV.
## CONCLUSION

The ALJ erred in rejecting multiple dispositive medical opinions and in rejecting Ortiz's subjective testimony of seizures and mental health symptoms. Because the record is fully developed, we reverse the judgment of the Magistrate Judge with instructions to remand to the ALJ for calculation and award of benefits.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**